IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ARYANA ADAMS,               ) | CIVIL ACTION 4:04-23220-CMC-TER |
| )  | |
| Plaintiff,         ) | |
| ) | |
| v.                          ) | |
| ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART         ) | |
| COMMISSIONER OF SOCIAL      ) | |
| SECURITY,                   ) | |
| ) | |
| Defendant.         ) | |
| _____) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

Shanae Simmons, on behalf of her minor daughter, Aryana Adams, filed an application for Supplemental Security Income (SSI) on March 13, 2002, (Tr. 51-53), alleging disability since daughters birth on January 14, 2002, due to a cleft lip and palate causing difficulty sucking (Tr. 55). Her applications were denied at all administrative levels, and upon reconsideration (Tr. 38-42, 45-47). The Administrative Law Judge (ALJ) issued an unfavorable decision on May 25, 2004, finding

plaintiff was not disabled within the meaning of the Act because she did not have marked limitations in two areas of functioning or an extreme limitation in one area of functioning (Tr. 11-21). The Appeals Council's denial of plaintiff's request for review of the ALJ's decision made it the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). (Tr. 4-6).

## II.  FACTUAL BACKGROUND

The plaintiff, Aryana Adams, was born January 14, 2002, (Tr. 51), and was 2 years and 4 months at the time of the ALJ's decision.

## III.  DISABILITY ANALYSIS

The plaintiff argues that this case should be remanded because plaintiff's speech therapy records are not contained in the record. Plaintiff asserts that the ALJ recognized that the medical evidence regarding plaintiff's August and September 2003 surgeries and the speech therapy notes from Easter Seals were not contained in the record, and the ALJ assisted plaintiff in completing authorization forms to obtain those records. (Tr. 27, 32-33). Plaintiff contends that Dr. Lefaivre's surgery records were received, but none of the records from Easter Seals were sent.

Defendant asserts that the record was held open for nine months after the hearing in order to obtain these records. (Tr. 14, 25). Defendant argues that "where, as here, the ALJ inquired into the relevant facts and provided plaintiff ample opportunity to submit additional evidence, she was not deprived of a full and fair hearing because she failed to provide such records." Thus, defendant argues that the ALJ attempted to obtain the records so plaintiff's argument lacks merit.

In the decision of May 25, 2004, the ALJ found the following:

1. The claimant, a 2-year old child and has never engaged in substantial gainful activity.

2. The claimants impairments do not presently meet, equal or functionally equal any impairment listed in the listings of impairments.

3. The claimant currently has a surgically corrected and repaired cleft lip and palate, impairments which cause more than minimal limitations and are thus "severe" within the regulatory definition.

4. The claimant does not have an impairment or combination of impairments, which meets or medically equals the criteria of any impairment in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant has "no" impairment of the domain of acquiring and using information.

6. The claimant has "no" impairment of the domain of attending and completing tasks.

7. The claimant has "no" limitations of the domain of interacting and relating with others.

8. The claimant has "no" limitation of the domain of moving about and manipulating objects, and no motor limitations.

9. The claimant has "no" limitations of the domain of caring for herself.

10. The claimant has "less than marked" limitations of the domain of health and physical well being.

11. The claimant has no impairment or combination of impairments, which is functionally equal in severity to the listings.

12. The allegations of the claimant's limitations are not totally credible for the reasons set forth in the body of the decision.

>    13.    The claimant has not been under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.924(C)).

(Tr. 20-21).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Under the Provisions of the Social Security Act, as amended, a child under the age of 18 is considered "disabled" for purposes of eligibility for SSI payments if the child has a medically determinable physical or mental impairment that results in "marked and 'severe' functional limitations." The impairment or impairments must also have lasted or be expected to last for a continuous period or at least 12 months or result in death.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.  The medical records as set out by the defendant have not been disputed by the plaintiff and plaintiff did not set out a summary of the medical records in her memorandum.  Therefore, the undisputed and relevant medical evidence as stated by the defendant is set forth herein.

On January 14, 2002, Jean-Francoi Lefaivre, M.D., examined plaintiff after she was born with a left complete cleft lip and palate.  Other than the complete left cleft lip and palate with a 10 mm gap of the alveolar, plaintiff's examination was normal.  Dr. Lefaivre instructed Ms. Simmons, the mother, in feeding the plaintiff and planned on performing lip adhesion surgery followed by formal lip repair (Tr. 117-118).

On January 30, 2002, Dr. Lefaivre re-examined plaintiff.  She was initially being breast fed, but her mother switched to Mead-Johnson bottle.  Plaintiff was drinking two ounces every two hours and she had regained her birth weight.  There was no change in plaintiff's physical examination.  Dr. Lefaivre planned to re-evaluate plaintiff in six weeks and schedule surgical lip adhesion or lip repair (Tr. 96).

On March 13, 2002, Dr. Lefaivre found plaintiff was doing well.  She was tolerating bottle-feeding, and was gaining weight appropriately.  Her examination was unchanged, and Dr. Lefaivre scheduled plaintiff for lip adhesion surgery (Tr. 94).

On March 22, 2002, plaintiff reported to Palmetto Richland Memorial Hospital Emergency Room for vomiting. Ms. Simmons was instructed to provide plaintiff with plenty of fluids and to return in 24 hours for a recheck (Tr. 105).

On March 26, 2002, C. Heebner, plaintiff's pediatrician, evaluated her for problems with vomiting. Dr. Heebner noted that, at plaintiff's 2 month check-up, she had some slowing of her weight gain, so he suggested concentrating her formula to 20 calories per ounce. Plaintiff did well initially but had been vomiting over the previous week, and she was having difficulty latching onto all but one kind of bottle nipple. Dr. Heebner noted that plaintiff seemed to suck hungrily from her bottle, but she spat up a large amount twice. Dr. Heebner referred plaintiff for a pyloric ultrasound (Tr. 155).

On April 19, 2002, Alan H. Brill, M.D., performed surgical insertion of ventilation tubes secondary to chronic otitis media (ear infection), fluid in the middle ear spaces was removed with suction ventilation tubes inserted. The patient was then prepped and draped for Dr. Jean-Francois Lefaivre's repair of the cleft palate (Tr. 127). Plaintiff was then admitted to Palmetto Richland Memorial Hospital for a left lip adhesion and discharged on April 20, 2002 (Tr. 91).

On April 24, 2002, Dr. Lafaivre noted plaintiff was doing well. Her suture line looked good, and there was no evidence of infection, and there was better nasal symmetry compared to preoperatively. Dr. Lefaivre asked Ms. Simmons to followup in three weeks (Tr. 93).

On June 12, 2002, James E. Padgett, Jr., M.D., a State agency medical consultant, reviewed plaintiff's medical records and determined that plaintiff's cleft lip and palate was a severe impairment resulting in less than marked limitations in the area of health and physical and well-being but caused no limitations in the areas of acquiring and using information, attending and completing

6

tasks, interacting and relating with others, moving about and manipulating objects, and caring for self (Tr. 142-150).

On June 13, 2002, E. Walsh, M.D., treated plaintiff for an ear infection (Tr. 152).

On July 10, 2002, plaintiff returned to Dr. Lefaivre and was doing well. Her weight was over 11 pounds, she was alert and in no acute distress, and her anterior fontanelle was soft and normal. The alveolar gap had been narrowed significantly by the lip adhesion. Dr. Lefaivre scheduled the next procedure, which was surgical lip repair (Tr. 238).

On September 24, 2002, Charles M. McKenzie, M.D., a State agency medical consultant, reviewed plaintiff's medical records and determined she had less than marked limitations in the area of health and physical well-being, but no limitations in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for self (Tr. 166-171).

On April 6, 2003, plaintiff was treated for probable pneumonia (Tr. 192).

On August 1, 2003, plaintiff was treated in the emergency room of Palmetto Health Richland for an ear infection causing fever and vomiting (Tr. 175-184).

On August 8, 2003, an operative report dictated by Dr. Lefaivre stated that plaintiff underwent cleft lip adhesion in April 2002, which was supposed to be followed by a cleft palate repair in August 2002, but plaintiff had not returned for followup until June 2003. He also noted that, because her palate had not been repaired, plaintiff experienced significant speech delay, but the lip will be repaired in the next few months and risks and benefits of the procedure were given to the family (Tr. 225-226). Plaintiff was admitted for clef palate repair and Dr. Lefaivre performed the

procedure with intra alveolar alveoloplasty and plaintiff was discharged on August 10, 2003, with instructions to followup on August 20, 2003 (Tr. 228).

Plaintiff was in to see Dr. Lefaivre for a followup visit on August 20, 2003. On physical exam the palate appeared to be healing nicely. Dr. Lefaivre assessed satisfactory postoperative course and scheduled her for her lip repair surgery (Tr. 236).

On September 5, 2003, Dr. Lefaivre performed cleft lip repair surgery and noted that when plaintiff had finally returned for followup in August, the priority was to close the palate so she could obtain normal speech (Tr. 256).

Dr. Lefaivre's operative note stated that plaintiff had residual nasal asymmetry following the procedure, but "significant improvement" was noted and good lip symmetry is obtained (Tr. 257).

## V. ARGUMENTS

Aryana Adams was a 2-year old child at the time of the hearing in which her mother appeared *pro se* on her daughter's behalf. Plaintiff's mother alleges she became disabled on January 14, 2002, her date of birth, due to cleft lip and palate. As previously discussed, plaintiff asserts that she acted *pro se* at the hearing, and that this case should be remanded because plaintiff's speech therapy records are not contained in the record. Plaintiff's mother asserts that she completed authorization forms as instructed by the ALJ so that the speech therapy records could be obtained from the Easter Seals. Plaintiff asserts that it was error for the ALJ not to fully develop the record and obtain and review these records before reaching a decision in this case.

Defendant asserts that the ALJ did have the speech therapy records requested from Easter Seals to no avail after leaving the record open for nine months. Thus, defendant asserts that the ALJ did not err in his decision.

It is settled that the ALJ is required by 20 C.F.R. § 404.927 to inquire fully into each relevant issue before him.  *See* Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962).  He or she should scrupulously and conscientiously probe into, inquire of, and explore all relevant facts, and should be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.  The performance of this duty to inquire is particularly important when, as here, a claimant appears without counsel.  *See*  Marsh v. Harris, 632 F.2d 296 (4th Cir. 1980).  Where a claimant attends the hearing without counsel, the ALJ has a  "heightened duty of care and responsibility" to fully develop the evidence of an  alleged disability.  Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980); *see also* Crider v. Harris, 624 F.2d 15, 16 (4th  Cir. 1980).  In the case of Fleming v. Barnhart, 284 F. Supp. 2nd 256, (D. Md. 2003), the Court held that "other circuits have held that, in cases involving *pro se* claimants, reviewing courts also have a heightened duty to make a searching investigation of the record to ensure that the claimant's rights have been adequately protected.  Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir.1980);  Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 43 (2d Cir.1972)."

A review of the hearing transcript reveals that the plaintiff's mother testified that plaintiff was going to speech therapy at Easter Seals and the only words that she could say was momma and her name. Her mother testified that plaintiff becomes uncontrollable because she gets so frustrated from not being able to talk. (Tr. 31-32). The ALJ acknowledged the mother's testimony that plaintiff's speech was impaired and stated "We'll add her records from Easter Seals as a source in

which we need to request some information." (Tr. 32). The ALJ had plaintiff's mother sign authorizations so that additional records could be obtained including the speech therapy records.

It is noted, that through no apparent fault of the ALJ, the records concerning plaintiff's speech therapy were not received. The ALJ held the record open for nine months. It is also noted that the records were not obtained by plaintiff's mother and forwarded to the Commission. However, this case is about the child and the fact is the ALJ did make a decision without receiving or reviewing the records concerning the plaintiff's impaired speech. Therefore, justice in this case concludes that the record was not properly developed by obtaining plaintiff's speech therapy records before the decision to deny benefits was made. In the decision the ALJ found that "the claimant has 'no' limitations of the domain of interacting and relating with others." Therefore, based on the above, this case should be remanded to the Commissioner so that the record may be properly supplemented and a full reconsideration of this issues made. *See* Highfill v. Bowen, 832 F.2d 112 (8th Cir. 1987)("Unfairness or prejudice resulting from incomplete record in disability case, whether because of lack of counsel or lack of diligence on administrative law judge's part, requires remand."); Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir.1984)(same); *see also* Wilkins v. Secretary, Dept. of Health & Human Services.[1]

## VI. CONCLUSION

For the reasons explained in the body of this Report and Recommendation, it is RECOMMENDED that this case be REMANDED TO THE COMMISSIONER UNDER SENTENCE FOUR for further administrative action as set out above.

---

[1] Without the court's analysis of the speech therapy records, the undersigned cannot address plaintiff's additional argument that she meets Listing 101.08.

                                  Respectfully submitted,

                                  s/Thomas E. Rogers, III  
                                  Thomas E. Rogers, III  
                                  United States Magistrate Judge

February 14, 2006  
Florence, South Carolina

        **The parties' attention is directed to the important notice on the next page.**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & 
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina  29503
